IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LINDA BARR, )<br>   )<br>   Plaintiff, )<br>   )<br>   v. )<br>   )<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>   )<br>   Defendant. ) | CIVIL ACTION NO. 2:06-CV-545-WC |

## MEMORANDUM OPINION

### I. INTRODUCTION

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security. The Eleventh Circuit, in the en banc decision of *Bonner v City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

and entry of a final judgment by the United States Magistrate Judge (Docs. #9-10, filed July 31, 2006). Based on its review of the record and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ISSUES

*A. Introduction*

The plaintiff was fifty-seven years old at the time of the hearing before the ALJ, has

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

a high school education and vocational training in cosmetology. The plaintiff's prior work experience includes work as a beautician and cashier. Following the administrative hearing, the ALJ concluded that the plaintiff had the severe impairments of bilateral hand pain with numbness, neck and left shoulder pain, chest pains, depression and alcohol abuse. The ALJ nonetheless concluded that the plaintiff was not disabled, because she retained the residual functional capacity to perform light to sedentary exertional work including her past relevant light work as generally performed in the national economy (TR 17-19).

## B. *Plaintiff's Claims*

The plaintiff presents three[4] issues for review: (1) whether the ALJ improperly assessed the plaintiff's residual functional capacity (RFC) as required by SSR 96-8p, (2) whether the ALJ improperly found that the plaintiff could perform her past relevant work, and (3) whether the ALJ improperly failed to apply the Medical-Vocation Guidelines to find the plaintiff disabled.

## IV. DISCUSSION

### A. *The Plaintiff's RFC*

The ALJ found, after evaluating the medical evidence and testimony at trial, the plaintiff retained the RFC to perform sedentary to light exertional work (TR 18). The plaintiff argues that the ALJ's ruling violates SSR 96-8.

---

[4]The plaintiff's issues 2 and 3 have been combined as they are essentially the same issue (*See* Doc. 13, p. 10).

SSR 96-8 provides that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." An individual RFC is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545. In making this assessment, the ALJ noted that he must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and SSR 96-7p. He further noted that he should consider any medical opinions, that are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (TR 17). *See also* 20 C.F. R. § 404.1527 and SSR 96-2p and 96-6p.

The plaintiff argues that the ALJ's finding that the plaintiff can perform sedentary to light work was a "conclusory, categorical residual functional capacity assessment" that did not consider separately the seven exertional strength demands of sitting, standing, walking, lifting, carrying, pushing and pulling, as they relate to the plaintiff's hands, neck and left shoulder (Doc. 13, p. 10-11).

The ALJ found that "[t]he medical records revealed that the plaintiff possesses no significant limitations due to her right hand, left hand, shoulders, chest pains or depression symptoms" (TR 18). He makes this finding based on the facts that the plaintiff reported

5

being able to lift 8 pounds with her right hand, 15 pounds with her left hand and could write with her right hand (though she testified that this was painful, TR 208). The plaintiff also testified that she could sit for 3 hours and stand/walk for 4 hours in an eight-hour day. In addition, the ALJ noted the plaintiff performed cashier's work at Wal-Mart successfully for about 6 months, and that she reported being able to cook, make beds, wash cloths [small loads], grocery shop, vacuum, clean the bathroom, wash dishes, watch television, read, drive short distances, have lunch with family and friends, attend church, and take care of three dogs and a cat with the help of her husband[5] – all of which the ALJ found consistent with work activities. Within this analysis, it is clear that the ALJ considered the plaintiff's sitting and standing abilities, and her ability to lift and carry.

The ALJ also considered exhibits 7-F, 8-F and 9-F in his hypothetical to the Vocational Expert ("V.E."). Exhibit 7-F is an AL Capacity Assessment performed May 18, 2004 (TR 160). In that assessment, the medical consultant found the plaintiff capable of carrying 50 pounds occasionally, 25 pound frequently, and could sit/stand six hours in an eight hour day. The medical consultant reviewed the medical records from the plaintiff's treating physicians, Dr. Mark Ellis and Dr. David McCalman. The plaintiff was found limited in the use of her right upper extremity as a result of her right hand impairment both in gross and fine manipulations (TR 163).

Exhibit 8-F was an evaluation of the plaintiff's mental state performed on May 18,

---

[5]These activities were essentially outlined to the medical consultant in the examination of plaintiff on May 18, 2004 (TR 180; Exhibit 8-F).

6

2004 (TR 168). The consultant found the plaintiff needed an RFC Assessment based on affective and personality disorders. He diagnosed a dysthymic disorder and borderline personality disorder (TR 171, 175). He found mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. In Exhibit 9-F (AL Capacity Assessment performed on the same date), the medical consultant found no significant limitations. He found that the plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, and that the plaintiff could "attend" for 2 hour periods (TR 182, 184). The ALJ asked the V.E. to take these further limitations into consideration at the hearing. Thus, it would be difficult to conclude that the ALJ failed to consider separately the seven exertional strength demands, as well as claimant non-exertional limitations, in light of his consideration of Exhibits 7-F, 8-F and 9-F.

Further, in finding claimant's RFC to be in the sedentary to light exertional category, the ALJ noted that his findings were "based on the full record and consistent with sparse treatment and lack of objective findings and very little recent ongoing medical treatment" (TR 18). The ALJ made this determination after performing a detailed summation of the medical documentation of record.

The earliest medical records were obtained from the Southeast Alabama Medical Center for an admission and discharge February 8 and 9, 1996, for injury to her right wrist. At that time, claimant underwent an apponensplasty, removal of a foreign body, and was

casted (TR 117). There was no other records of treatment until the plaintiff saw Dr. David McCalman on varying occasions from 6-11-98 to 10-16-03.

On the initial visit with Dr. McCalman, 6-11-98, the plaintiff indicated that she was "looking for a new physician locally" (TR 139). She complained of acid reflux and depression. On the next visit three months later, 9-24-98, the plaintiff complained of left neck and arm pain and numbness (TR 138). X-rays of the right hand were essentially negative.[6] On the next visit, 10-2-98, the plaintiff reported she was doing better. Two months later, 1-14-99, the plaintiff's complaints pertained to her neck. Dr. McCalman recommended that she undergo an MRI of her cervical spine. An MRI was perform 1-13-99 and showed "no remarkable degenerative disc disease and there are no findings to indicate herniated disc disease" (TR 148). Claimant had mild osteoarthritic changes in an otherwise normal MRI scan of the cervical spine. There were no other treatment records pertaining to the cervical spine after this point.

During the 3-30-99 visit with Dr. McCalman (2 ½ months later), claimant reported lower abdominal pain for two to three days (TR 137). Claimant's primary complaint six months later, 9-3-99, was insomnia, weight loss, anxiety and depression. Two weeks later, 9-16-99, Dr. McCalman noted an improvement of these conditions with Prozac (TR 136). On 12-3-99, she reported dysuria and urinary frequency, and then there was no further treatment for 1 ½ years. On 5-21-02, she reported sinus congestion and drainage (TR 135).

---

[6]The conclusion of the radiologist was "minimal cervical spondylosis" (TR 149).

On 8-16-02, claimant's primary complaint was a cough and chest congestion. While Dr. McCalman did not specifically examine the right hand on that same date, he wrote claimant a note limiting the use of her hand (TR 134). On 11-25-02, claimant was stable on Prozac (it was "working well for her"), and was given Ultram "sparingly" for her chronic right hand pain (TR 133). The dose was increased on 12-20-02 because she reported to Dr. McCalman that she was under "a lot of stress with taking care of her mother" (TR 132).

The ALJ noted that on claimant's last visit, 10-16-03, claimant had not followed up with her appointments as requested, and had stopped taking Lipitor. She reported dizziness, dysuria, urine frequency and hesitation. The ALJ noted that Dr. McCalman had prescribed Neurontin, and at that time the plaintiff reported the medication "really seemed to help her discomfort in the hand and wrist" (TR 131). At the hearing, the plaintiff testified that she was not taking either of the previous prescribed medications for hand pain, rather she was taking "about eight Tylenol a day" (TR 215).

With less than a dozen visits for her hand since injuring it in February, 1996 (almost 9 ½ years), and the same for visits for depression, the ALJ's conclusion that plaintiff's treatment for these conditions was "sporadic," was supported by the medical records. While the ALJ did not base his conclusion solely on the absence of treatment, he did consider whatever limitations, medications and tests that were performed, when determining claimant's functional abilities. There were no specific limitations in the treating medical record as to the plaintiff's hand condition, except to say that she was limited in its use (but

9

not how much), and no limitation place on her for her depression. As a result, the consultative examinations were ordered by the Social Security Administration prior to the hearing.

Claimant was seen for a consultative examination by Dr. Mark B. Ellis, D.O., on April 22, 2004, for her hand and wrist condition. The findings were summed up, in detail, by the ALJ in his decision (TR 15-16). Dr. Ellis took a history of her hand and wrist injury in 1996, indicating she had two surgeries on her wrist, a year of rehabilitation with some improvement, and was essentially told thereafter that there was nothing else that could be done. He conducted a clinical evaluation of plaintiff's neck/cervical spine, upper extremities, dorsolumbar spine, lower extremities, neurologic status, sensation, coordination and obtained X-rays (TR 151-52). He noted normal findings (*See,* TR 154-55) except for grip strength weakness (3/5), inner osseous muscle strength decrease (3/5) and decreased pinch strength (3/5) pertaining to the right upper extremity. Dr. Ellis also noted increased sensitivity to touch on the right hand as compared to the left. The ALJ took Dr. Ellis' evaluation into consideration when reaching his decision as to claimant's functional abilities and limitations.

Dr. W. G. Brantley, Ph.D., also performed a consultative evaluation on April 24, 2004, for the plaintiff's complaints of depression (TR 156-9). Dr. Brantley took a family history, legal history and substance abuse history. He performed a mental status examination that made note of the plaintiff's general appearance (normal as to presentation, clothing, intellect, executive functioning skills and adaptive skills), characteristics of speech (normal), mood

and affect (stable, nice sense of humor), sensorium and cognition (normal), and concentration and attention (normal). Claimant was properly oriented, and there were no problems in regard to nervousness, tearfulness, crying, dysthymia or depression. Slightly poor effect was noted as to memory, but there was no memory or concentration impairment noted. She could think without flight of ideas, grasped abstractions and had normal thought process and content. Judgment and insight were intact. Dr. Brantley concluded after his assessment that, claimant met the criteria for mild dysthymic disorder, in remission on Prozac; had intermittent personality disorder and borderline personality disorder; but that she was stable on medication. This was consistent with the records of treating physician Dr. McCalman, and together with Dr. McCalman's records provided substantial evidence that claimant did not suffer any additional limitation as a result of her non-exertional conditions. Still the ALJ posed his hypothetical to include that claimant was moderately limited as to her ability to carry out detailed instructions (he asked the V.E. to take into consideration Exhibit 9-F; TR 219), and the V.E. indicated that these limitation would not preclude the performance of the surveillance system monitor or the gate guard jobs. The V.E. also indicated that claimant's non-exertional restriction would not preclude performance of her past, relevant work.

In light of the above evidence of record, this Court finds that there was substantial evidence in the record to support the ALJ's conclusion that claimant "retains the residual functional capacity to perform sedentary to light exertional work with moderate deficits in concentration." The ALJ stated further: "[t]his conclusion is based on the full record and

11

consistent with sparse treatment and lack of objective findings and very little recent ongoing medical treatment" (TR 18). Evaluation of the full record, including the detailed summation of the treating medical, objective medical evidence, claimant's testimony at hearing, as well as an acknowledgment of the evaluating physicians' findings, provided ample evidence in support of the ALJ's finding as to the plaintiff's functional abilities. The ALJ's factual findings are conclusive as they are substantially supported by the record evidence. 42 U.S.C. § 405(g); *Graham*, 129 F.3d at 1422. The decision of the ALJ is not due to be reversed on this ground.

### *B. Plaintiff's Ability to do Past Relevant Work*

The plaintiff argues that the ALJ improperly concluded that claimant could perform her past relevant work (Doc. 13, p. 11). The plaintiff is correct that a review of the hearing transcript shows that the V.E. testified that the plaintiff could *not* perform her past relevant work considering the functional limitation as to the plaintiff's right hand and wrist (TR 217; Exhibit 7F). The V.E. explained that both of the plaintiff's prior jobs required the frequent use of claimant's right hand (TR 217-18). Thus, there is no support in the record for the ALJ's conclusion that

> [t]he impartial vocational expert testified that based upon the claimant's residual functional capacity as cited above, the claimant could return to her past relevant light work [cashier and beautician] which is unskilled and skilled work. The vocational expert further testified that the claimant could perform these jobs as she performed it in the past and as classified by the **Dictionary of Occupational Titles**. (TR 19, *emphasis in original)*.

What the V.E. *did* state was that claimant had transferable skills allowing claimant to

perform jobs existing in substantial numbers in the national and regional economy, as required by 20 C.F.R. §§ 1520(g)(1) and 1562(c)(1). The V.E. stated:

> I know of only two jobs where reaching and handling are not present, and the first is a surveillance system monitor. The DOT Code is 379.367-010. It is classified as sedentary work. It is classified as unskilled with an SVP of 2. Jobs in the regional economy would be approximately 15,000. Jobs in the national in excess of 150,000. . . .The second would be for a gate clerk or a gate guard. The DOT Code is 372.667-030. This is also light employment. It is also considered semisk-, excuse me, unskilled with a SVP of 2. Jobs in the regional economy would be in excess of 20,000, in the national economy in excess of 200,000 (TR 218).

The V.E. further testified that the claimant's non-exertional impairments would not prevent the plaintiff from performing these jobs, taking into consideration the plaintiff's advanced age and high-school education (TR 220).

While the ALJ's denial of disability is unsupported at Step 4 of the evaluative process, it is supported at Step 5, as there are jobs in the national and regional economy that the plaintiff can do. Thus, even if the ALJ had correctly stated the opinion of the V.E. as to the plaintiff's inability to perform her past work, the likelihood that his ultimate finding of "not disabled" would have changed is unlikely given the V.E.'s strong testimony that there was work that the plaintiff could do. *See Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006), *citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Miller v. Barnhart*, 182 Fed. Appx. 959, 960 (11th Cir. 2006); *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (if the ALJ's misapplication of the regulations does not change the ultimate result, the error is harmless). The decision of the ALJ is not due to be reversed on this ground.

*C.  Use of the Medical-Vocational Guidelines*

Last, the plaintiff argues that the ALJ improperly failed to apply the Medical-Vocation Guidelines to find her disabled.  The plaintiff argues that because she has reached the advanced age of fifty five, she would be considered disabled under the "Grids" contained in 20 C.F.R. Part 404, Subpart P, even if she could perform a full range of either unskilled sedentary or unskilled light work (Doc. 13, p. 15).  The plaintiff argues that Rules 201.06 and 202.06 of the Medical-Vocation Guidelines (the Rules that pertain to "sedentary" work) apply to the instant facts.  The Commissioner argues that Rule 200.00(e)(2) (the Rule that applies to "light" work) applies to the instant facts.  The Commissioner also argues that Rule 202.06 applies because the plaintiff has transferable skills.

There is substantial evidence in the record that the plaintiff has transferrable skills (testimony of the V.E., TR 217, 220).  There is also substantial evidence in the record that the plaintiff had non-exertional limitations and, therefore, was unable to perform a full range of "light" or "sedentary" work.  Thus, the ALJ had the V.E. consider the additional limitations of Exhibits 7-F, 8-F (physical/right upper extremity) and 9-F (emotional conditions)  (TR 218-19).  The V.E. testified that even with the additional limitations provided by the evaluations, there was work in the national and regional economy that the plaintiff could do.

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-

14

exertional impairments that significantly limit basic work skills." *Welch v. Bowen,* 854 F.2d 436 (11th Cir. 1988), *citing Walker,* 826 F.2d at 1002-03.  The  court in *Welch* went on to state:

> Although the ALJ may rely upon the grids as a "framework" to determine whether the Secretary has met this burden, "where a claimant's condition is not met by the criteria of a rule the disability determination is generally make by reference to individualized evidence and principles relating to the assessment of individual factors. . ." (*citation omitted*).  Put differently, the ALJ must "articulate specific jobs that exist and that the claimant is capable of performing." *Id.* at 439, *citing Cowart v. Schweiker,* 662 F.2d 731,736, n. 1.

The Social Security Regulations also indicate that the ALJ is to give full consideration to all relevant facts in accordance with the definitions and in his discussion of vocational considerations.  20 C.F.R. § 404.1569.

In this case, the ALJ gave specific findings on the availability of particular jobs through the testimony of the V.E.  The decision of the ALJ is not due to be reversed on this ground.

## V. CONCLUSION

The court has carefully and independently review the record, and concludes that the decision of the Commissioner is due to be affirmed.  A separate order will issue.

Done this 7th day of May, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE